GERO v. ABBOTT.

SALES—HUSBAND AND WIFE—AGENCY.

No liability of the wife is created by the sale of an automobile to her husband, and no agency to act for her is shown, where the husband told the seller that he intended to give it to her, although a receipted statement given to the wife by the vendor treated the debt as due from her, and all the facts were known to the wife; payment to be made, under the agreement, by shares of stock of the husband to be subsequently transferred to the seller. McALVAY, MOORE, and BROOKE, JJ., dissenting.

Error to Chippewa; Steere, J. Submitted February 15, 1909. (Docket No. 104.) Decided July 15, 1909.

Assumpsit by Benjamin Gero against Jennie L. Abbott for goods sold and delivered. A judgment for plaintiff is reviewed by defendant on writ of error. Reversed, and no new trial ordered.

*Warner & Sullivan*, for appellant.

*L. C. Holden*, for appellee.

McALVAY, J. This case involves the sale of an automobile, claimed by plaintiff to have been made by him, to defendant through her husband. It is an action in assumpsit commenced by attachment against defendant and Samuel G. Abbott. Plaintiff later discontinued as to Samuel G. Abbott, and declared against defendant. This case was tried before the court without a jury, and, upon request of defendant, the court filed findings of fact and his conclusions of law, ordering a judgment to be entered in favor of plaintiff for the purchase price of the automobile. To these findings of fact and conclusions of law defendant proposed amendments. Upon due consideration the court amended the findings of fact, but refused to amend the

conclusions of law upon which judgment was rendered. The amended findings of fact and the conclusions of law are as follows:

## "AMENDED FINDINGS.

"The findings heretofore filed herein are hereby amended to read as follows:

### "FACTS.

"(1) This is a suit in assumpsit brought to recover the value of an automobile claimed to have been sold by plaintiff to defendant through her husband, acting as her agent.

"(2) Plaintiff was and is a resident of Manistique, and defendant was and is a resident of Sault Ste. Marie, residing at said place with her husband.

"(3) In the early spring of 1906, March or April, S. G. Abbott, defendant's husband, who was engaged in the sale of mining stock, visited Manistique for the purpose of selling stock in the Cobalt Silver & Copper Mining Company, Limited, of Ontario. He had a letter of introduction to plaintiff from George P. McCallum, a mutual acquaintance, who was also interested in the mining company, and was its secretary and treasurer. Abbott succeeded in getting plaintiff interested in the mine, selling him 2,000 shares of stock at 50 cents per share; the par value being $1 per share. There were also negotiations between the parties looking to plaintiff's assisting Abbott in selling the stock under an arrangement for appointing special agents for its sale in various cities in the upper peninsula of Michigan, and elsewhere, and it was proposed that they divide the commission.

"(4) Plaintiff was a business man, located at Manistique, interested in the electric light and hardware business, and, amongst other things, in selling Oldsmobiles; he having several on hand, including a new touring car which he had recently purchased, costing him $2,000 wholesale.

"(5) Abbott and plaintiff in the progress of their interviews, amongst other things, negotiated a trade of this large touring car for stock in the Cobalt Silver & Copper Mining Company, Limited. The price of the car at retail, with extension top, was $2,375, and it was agreed between plaintiff and Abbott to exchange this car with the top for 5,250 shares of stock in the mining company; Ab-

bott telling plaintiff he was buying the machine for his wife. These negotiations were begun in the spring of 1906, on Abbott's first visit to Manistique, and were consummated in October, 1906, at a time when Abbott again visited Manistique accompanied by his wife, the defendant in this case.

" (6) Abbott informed plaintiff that the stock he was to exchange for the machine was not available, being then in the hands of the treasurer of the company at Sault Ste. Marie under a pooling agreement, and he could not get it until the following May, when he would procure the same and deliver it to plaintiff.

" (7) When the deal was consummated in October, 1906, Abbott instructed plaintiff to make out the bill of it to his wife, the defendant in this case, stating he was buying the car for her, instructed him to deliver it to her at Sault Ste. Marie, and to send a man with it to instruct her in running it when delivered. She was in Manistique at that time with her husband, and was cognizant of the transaction. She was told by her husband, in plaintiff's presence, that he had bought this auto from Mr. Gero for her, and had traded him mining stock for it. She asked if Mr. Gero had got his stock, and her husband said 'No;' it was in a pool now. She acquiesced in what had been done, and received from the plaintiff the following paper:

" 'BENJAMIN GERO, agent for Oldsmobiles,
                     " 'MANISTIQUE, MICH., October 1, '06'.
" 'Mrs. S. G. ABBOTT, Sault Ste. Marie, to BENJAMIN GERO, Dr.
" 'To Model S. Palace Touring Car _____ $2,250 00
" 'To one extension top _____    125 00
                                                       _____
                                                       $2,375 00
" 'Received payment.
                                            " 'BENJAMIN GERO.'

" Her husband gave to plaintiff the following paper:
                                         " 'October 1st, 1906.
" 'I hereby sell to Benjamin Gero and authorize the Cobalt Silver and Copper Mining Company, Ltd., to transfer on their books five thousand two hundred fifty shares (5,250) of my stock.
                                            " 'S. G. ABBOTT.'

"(8) On the 3d of October, 1906, plaintiff showed the document he had received from Abbott respecting the sale of this stock to George P. McCallum, treasurer of the mining company, at Milwaukee, Wis., and inquired

if he would honor a transfer of the stock from Abbott. Mr. McCallum told him he would not, but that after May 1st the pooling agreement would expire. Abbott did not return his pooling receipt to the treasurer, and did not ask for his stock. Neither did plaintiff present the agreement to the treasurer or demand his stock at any time afterwards.

"(9) In July, 1907, this stock was seized in Canada by the sheriff of a Canadian court under some writ from said court issued in proceedings against Abbott, and afterwards sold on July 27, 1907, for the sum of $8.

"(10) Plaintiff previously delivered the car to Mrs. Abbott at Sault Ste. Marie, and sent a man to instruct her to operate it, and on August 6, 1907, after the seizure and sale of the stock on the Canadian writ, plaintiff made written demand on S. G. Abbott for his stock.

"(11) Learning later of the fate of this stock which he was to receive, and being unable to get pay for the car, having in the meantime heard that defendant had made a bill of sale of it to someone else, plaintiff began suit by writ of attachment against S. G. Abbott and defendant jointly. He later discontinued the proceedings against Abbott, and declared against the defendant herein individually.

"(12) All files and records and exhibits are hereby made a part of these findings."

The conclusions of law already filed were ordered to stand without amendment.

## "CONCLUSIONS OF LAW.

"The touring car was purchased from plaintiff by defendant through her husband acting as her agent. This is not a case where property was purchased by one and ordered delivered as a present to another, who was ignorant of the details of the transaction, and never authorized or ratified the deal. She knew at the time that the car was sold through her husband to her, and that it was not yet paid for. She knew the price at which it was sold, received the bill, accepted title to the property, as well as subsequent delivery of same, ratifying her husband's agency in every particular, and accepting the benefits of the transactions with full knowledge. The title passed from plaintiff to her. This would be true under the facts in the case at bar even if her husband had paid the price at the time.

" 'Where A., with B.'s assent, buys goods (in his own name) for B., but pays the price out of his own money, the property will vest in him, and will not be divested, though a bill of sale be afterwards executed (by the vendor) to B.; but, if the bill of sale had been so executed at the time of the sale to B., the property in the goods would have vested in him.' 12 Modern Reports,. 344.

"At the instance of her husband, with her knowledge and approval, the sale was made to her, the title was passed to her, and the delivery of the article was also made to her. She received and accepted the benefit of it. Manifestly it was the understanding and expectation that her husband would pay for it and make her a present, not of the car, for she already had title to that, but of the purchase price. The expectation that another will pay for an article does not relieve the actual purchaser from that obligation.

"Judgment will be entered in favor of plaintiff for the purchase price of the touring car."

Defendants excepted to these findings and conclusions, and have assigned errors thereon, and also upon rulings of the court on evidence. In the brief filed two propositions are relied upon:

(1) That the testimony of plaintiff concerning statements of the husband were not admissible to establish agency without further proof.

(2) That the essential findings of fact and conclusions of law were not warranted by the evidence.

We find from the record, which is certified to contain all the evidence in the case, that there was other evidence in the case of the husband's agency besides plaintiff's testimony as to the husband's statement, as appears from defendant's testimony, also from the receipted bill in her name received by her, and the transfer of stocks from the husband to the plaintiff, both made on the date when she was present with her husband and plaintiff, and the transaction was rehearsed in her presence, and, as she testifies, "The final deal for this automobile was concluded." It is not necessary to quote from the record. The fact upon this question as found by the court is supported by evidence. It was not error to refuse defend-

ant's motion to strike out plaintiff's testimony, and to refuse to find for defendant as requested. The rule is so well settled that the findings of fact are conclusive where supported by any evidence that the citation of cases is unnecessary. An examination of all the evidence in the record shows that all the facts found by the court were supported by evidence, and that the conclusions of law are warranted by such findings.

We find no errors in the case. The judgment should be affirmed.

MOORE and BROOKE, JJ., concurred with McALVAY, J.

OSTRANDER, J. It seems to me that the testimony, all of which appears in the bill of exceptions, tends to establish one fact, which is that defendant's husband purchased from the plaintiff an automobile in his own behalf upon his own credit. There was no testimony tending to prove that in purchasing the automobile he was acting as agent for his wife. The fact that he told the vendor he proposed to give the automobile to his wife as a present has no probative force in establishing agency. The fact that at the request of the husband a statement was made on a billhead used by plaintiff, reading, "Mrs. S. G. Abbott  *  *  *  to Benjamin Gero, Dr.," etc., is not significant of agency in view of the further fact that the bill was receipted by the plaintiff. The fact that the wife, to the vendor's knowledge, knew of the transaction is, in view of other testimony, conclusive of the other fact that plaintiff sold the machine to the husband, and not to the wife, and not to the husband for the wife.

The judgment is reversed, and no new trial granted.

BLAIR, C. J., and GRANT, MONTGOMERY, and HOOKER, JJ., concurred with OSTRANDER, J.